UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM SOLANO, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>VISTRA CORPORATION, et al.,<br><br>   Defendants. | Case No. 25-cv-02073-EKL<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART**<br><br>Re: Dkt. No. 57 |

This tort action stems from "a massive fire and thermal runaway event" that occurred in January 2025, at the Vistra battery energy storage facility ("Vistra facility"), located at a former power plant in Moss Landing, California. Plaintiffs are Kim and Luis Solano ("the Solanos") and their businesses, the Haute Enchilada Café, Gallery, and Social Club ("Haute Enchilada") and Haute Properties LLC (together, "Haute entities"), which are located near the Vistra facility. Plaintiffs claim that Defendants Vistra Corp. and its related entities are responsible for the business losses, personal injuries, and property damage that Plaintiffs experienced due to the fire. Before the Court is the Defendants' motion to dismiss the first amended complaint. Mot. to Dismiss, ECF No. 57 ("Mot."). The Court carefully reviewed the parties' briefs and heard argument on November 13, 2025. Hr'g Tr., ECF No. 97. For the following reasons, the Court GRANTS the motion in part, with leave to amend.[1]

**I. BACKGROUND**

On January 16, 2025, a massive fire broke out at the Vistra facility ("Vistra Fire").[2] First

---

[1] As discussed below in Section IV, the Court does not grant leave to amend claims that Plaintiffs have stipulated to dismiss with prejudice.

[2] The facts provided herein are based on the allegations in Plaintiffs' operative complaint.

Am. Compl. ¶ 1, ECF No. 23 ("FAC").  Defendants Vistra Corp.; Vistra Corporate Services Co.; Dynegy Operating Co.; Moss Landing Power Co., LLC; Moss Landing Energy Storage 3, LLC; Luminant Power LLC; and Luminant Power Generation, LLC (collectively, "Defendants" or "Vistra") owned and operated the Vistra facility.  The Vistra Fire lasted days and destroyed most of the thousands of lithium-ion batteries stored at the Vistra facility.  *Id.* ¶ 2.  After the fire broke out, local officials took emergency precautions, including ordering residents to evacuate from their homes.  *Id.* ¶ 3.  Field surveys were later conducted that showed increased levels of heavy metals like nickel, cobalt, and manganese – which are used to create lithium-ion batteries – in the soil and water near the Vistra facility and surrounding areas.  *Id.* ¶ 4.  On February 18, 2025, the fire at the Vistra facility "ignited once more, emitting more chemicals and toxins in the air around Moss Landing."  *Id.* ¶ 13.  Three days later, Monterey County ordered "the disconnection" of the Vistra facility "from the grid."  *Id.* ¶ 14.

Plaintiffs allege that the Vistra Fire was caused by Defendants' flawed decisions in designing the Vistra facility, including the storage of lithium-ion batteries that are "susceptible to thermal runaway events[.]"  *Id.* ¶¶ 46-55, 60.  The complaint describes "thermal runaway" as "a violent chain reaction where a battery cell has reached a critical temperature at which the temperature will continue to rise on its own.  It is a dangerous self-perpetuating state in which the initial rise in temperature triggers further uncontrollable rises in temperature."  *Id.* ¶ 61 (citation omitted).  Plaintiffs contend that the thermal runaway event caused by the Vistra Fire led to the emission of various noxious gases and heavy metals in the area surrounding the Vistra facility.  *Id.* ¶¶ 65, 67.

The Solanos allege that the businesses they own have been greatly impacted due to the public's fear to visit Moss Landing after the fire.  *Id.* ¶¶ 10, 86, 90.  The Solanos own and operate the Haute Enchilada, which is located a little over a thousand yards away from the Vistra facility.  After the Vistra Fire, the Solanos "were forced to close" the Haute Enchilada "for two weeks," after which business decreased by more than 50% upon reopening.  *Id.* ¶ 9.  The Solanos ultimately had to indefinitely close the business and limit their services to hosting private events.  *Id.*  In addition, reservations at the Solanos' rental properties have "largely been canceled."  *Id.*

1  ¶ 10.

2       Plaintiffs allege that, at the time of the fire, "[s]oot and ash deposited from the fire covered
3 most of Moss Landing, including Plaintiffs' home, their restaurant, gallery, and their Airbnb
4 rentals." *Id.* ¶¶ 84. They assert that the "toxic substances," including the heavy metals and
5 noxious gases "continue to intrude upon and wrongfully cover and enter Plaintiffs' land and
6 properties[.]" *Id.* at ¶ 134. These contaminants have allegedly diminished the value of their land
7 and properties. *Id.* ¶¶ 135-136 (noting that the "intrusion of the contaminants . . . have diminished
8 the value" of the land and properties). Moreover, Plaintiffs allege that they "have suffered and
9 continue to suffer from inconvenience, personal discomfort, and annoyance, including, but not
10 limited to, sore throats, sinus irritation, breathing problems, headaches, tiredness, burning in the
11 lungs, nausea, irritation of the skin, rashes, and other symptoms that they did not have before the
12 January 16 Vistra Fire." *Id.* ¶ 137. "Plaintiffs have sought medical treatment and diagnoses"
13 based on these symptoms. *Id.*

14       On February 27, 2025, Plaintiffs filed the original complaint against Vistra and Defendants
15 LG Energy Solution Arizona, Inc. and LG Energy Solution Vertech Inc., less than two months
16 after the fire first broke out. ECF No. 1. Plaintiffs filed an amended complaint on March 21,
17 2025. FAC. In the amended complaint, Plaintiffs assert claims against Defendants for strict
18 products liability (first claim for relief),[3] inverse condemnation (second claim), negligence (third
19 claim), private nuisance (fourth claim), and trespass to real property and to chattels (fifth claim).
20 Plaintiffs request punitive damages, medical monitoring, and damages based on loss of property
21 value. *See generally id.* On August 26, 2025, Vistra moved to dismiss the amended complaint.
22 Mot.

23 **II.    LEGAL STANDARD**

24       Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails
25 to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege
26 "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

---

[3] This numbering reflects the numbering in the operative complaint. FAC at 25-30.

1  550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court "to
2  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
3  *Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of a Rule 12(b)(6) motion, the court generally
4  "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light
5  most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d
6  1025, 1031 (9th Cir. 2008).  However, the court need not "assume the truth of legal conclusions
7  merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061,
8  1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.
9  1981)).

## III.  REQUEST FOR JUDICIAL NOTICE

In ruling on a Rule 12(b)(6) motion, courts generally do not consider material outside the pleadings.  *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011).  However, courts may consider facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  But even under those circumstances, courts may not take judicial notice of materials for the purpose of creating a defense against the well-pleaded allegations in the complaint.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Defendants ask the Court to consider eleven exhibits in connection with their motion to dismiss.  *See* Req. Judicial Notice, ECF No. 59 ("RJN").  These exhibits consist of press releases or statements issued by the United States Environmental Protection Agency ("EPA"), Monterey County government agencies, and the University of California Division of Agriculture and Natural Resources.  The Defendants cite these exhibits to support their contention that the Vistra Fire did not cause the surrounding population to experience any adverse health effects.  *Id.*; Mot. at 3-5, 18 (citation omitted) ("Plaintiffs' missing allegations stand in stark contrast to the many government announcements of test results showing any impacts to air, water, and soil do not threaten human health.").  The Court may not consider these materials to create "a defense to the well-pled

4

allegations in the complaint[.]" *Khoja*, 899 F.3d at 1002. Thus, Defendants' request is denied.[4]

## IV. DISCUSSION

At the outset, during the hearing, Plaintiffs stipulated to dismiss their first, second, and fifth claims for strict products liability, inverse condemnation, and trespass to chattels, respectively, with prejudice. Hr'g Tr. 48:8-18, 49:10-19, 50:18-21. Accordingly, these claims are withdrawn with prejudice.[5] The Court turns to Plaintiffs' third, fourth, and fifth claims for negligence, private nuisance, and trespass to real property,[6] and Plaintiffs' requests for punitive damages, medical monitoring, and damages for loss of property value.

### A. Whether Economic Loss Doctrine Bars Plaintiffs' Negligence Claims

Defendants argue that Plaintiffs' negligence claims are barred by the economic loss doctrine. Mot. at 7. The economic loss doctrine requires that, in a negligence case, "the *compensable injury* must be *physical harm to persons or property*, not mere economic loss." *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (2006) (quoting *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 210 (1997)); *see also S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 394-95, 401 (2019) (noting that "claims for purely economic losses suffered from mere proximity

---

[4] At the motion hearing, Defendants argued for the first time that one of the EPA press releases in their request for judicial notice should be incorporated by reference in the complaint. Hr'g Tr. 8:21-9:13, 39:5-23 (referring to Decl. of Abbey Hudson Ex. B, ECF No. 58-2); *see* RJN at 2; FAC ¶ 75. Although the Court need not address this belated argument, it would not change the outcome as the EPA press release is only referenced in passing in the complaint and does not form the basis of Plaintiffs' claims. *Khoja*, 899 F.3d at 1002-03 (noting that a defendant may seek to incorporate a document into the complaint if the plaintiff refers to it extensively or it forms the basis of their claims).

[5] "[W]ithdrawals of individual claims against a given defendant are governed by Fed. R. Civ. P. 15, which addresses amendments to pleadings," as opposed to Fed. R. Civ. P. 41 which governs the dismissal of actions. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005); *Walker v. Arizona*, 158 F.4th 971, 981-82 (9th Cir. 2025) (explaining that Rule 41 applies to dismissal of "actions," and disallows "piecemeal dismissals" of individual claims). However, the Ninth Circuit has "taken a functional approach when analyzing the effect of a plaintiff's attempt to dismiss individual claims." *Walker*, 158 F.4th at 982. Accordingly, the Court construes the parties' stipulation for dismissal "as a consensual amendment under Rule 15(a)(2), which allows a party to amend its pleadings 'with the opposing party's written consent or the court's leave.'" *Id.* (citations omitted).

[6] Plaintiffs' fifth claim for relief consists of trespass to both real property and chattels. As Plaintiffs have stipulated to the dismissal of their trespass to chattels claim, the Court limits its analysis to the trespass to real property claim. Both are referenced as the "fifth claim" as stated in the complaint. FAC ¶¶ 132-139.

to an industrial accident create intractable line-drawing problems for courts" and thus are not "compensable in negligence"). If plaintiffs are entities and "not human beings," a negligence claim only accrues upon "the occurrence of *physical injury* to plaintiffs' property." *Cnty. of Santa Clara*, 137 Cal. App. 4th at 318. For the following reasons, the Court concludes that the Solanos plausibly allege physical harm to their persons and their property, and the Haute entities plausibly allege physical injury to their property, thereby insulating their negligence claims from the economic loss doctrine.

### 1.  **Personal Injury**

The Solanos have sufficiently alleged personal injury resulting from the Vistra Fire. The Solanos allege that they "have suffered and continue to suffer from . . . sore throats, sinus irritation, breathing problems, headaches, tiredness, burning in the lungs, nausea, irritation of the skin, rashes . . . that they did not have before the . . . Vistra Fire." FAC ¶ 137. Defendants do not appear to dispute that the Solanos have sufficiently pled personal injury. *See* Mot. at 7-8, 10 ("[T]he Solanos can at most state a claim only for their vaguely alleged health harms."). Given the Solanos sufficiently allege personal injury, their negligence claims are not barred by the economic loss doctrine. *See Tharpe v. Hyundai Motor Am., Inc.*, No. SA CV 2101428, 2023 WL 3150112, at *9 (C.D. Cal. Mar. 16, 2023) (finding economic loss doctrine does not bar tort claims where complaint alleged that defendant's product defect "trigger[ed] headaches, eye and throat irritation, nausea, vomiting, and difficulty breathing.").

### 2.  **Property Damage**

Both the Solanos and Haute entities have adequately alleged physical injury to property resulting from the Vistra Fire, for purposes of maintaining their negligence claims. Courts have found that "[t]he chemical contamination of a person's land is sufficient to show a physical injury to the land." *Coppola v. Smith*, 935 F. Supp. 2d 993, 1015 (E.D. Cal. 2013) (citing *Cal. Dep't of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069, 1084 (E.D. Cal. 2005)); *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995)); *see also Est, of Renzel v. Ventura*, No. 15-cv-01648, 2015 WL 8527522, at *6 (N.D. Cal. Dec. 11, 2015) (citation omitted) (finding negligence claim was not barred by economic loss doctrine where

6

plaintiffs "alleged that defendants caused contamination in the soil and the water table underneath the property").

In their complaint, Plaintiffs allege that "[t]he contaminants emitted by Defendants from the Vistra Fire and thermal runaway event physically intruded onto land and properties owned by Plaintiffs. Those heavy metals and noxious gases and other dangerous substances physically damaged and injured Plaintiffs' land and properties." FAC ¶ 135; *see also id.* ¶ 118 (alleging that, "[a]s a direct result of Defendants' negligence, the fire and thermal runaway released significant and dangerous levels of toxic chemicals into Plaintiffs' homes and businesses, thus harming them."). While Plaintiffs could have provided more detail regarding the extent of the soil contamination or other property damage, their allegations are sufficient at this stage of the litigation.[7] *See, e.g.*, *Blue Water Boating Inc. v. Plains All Am. Pipeline, L.P.*, No. CV 16-3283, 2017 WL 405425, at *5 (C.D. Cal. Jan. 26, 2017) (finding standalone allegation that "Plaintiff has ownership or leasehold interests in real or personal property damaged by Defendants' oil spill" was "enough to insulate Plaintiff's negligence-based claims from the application of the economic loss rule").

Relying on a California Supreme Court decision involving insurance policy coverage in the wake of the COVID-19 pandemic, Defendants argue that "the presence of potentially harmful substances on property" may only constitute physical injury for the purposes of the economic loss rule if the property is rendered "unusable and uninhabitable[.]" Reply at 2 (citing *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 15 Cal. 5th 1106, 1140 (2024)). In *Another Planet*, the California Supreme Court held that "the actual or potential presence of COVID-19 on an insured's premises generally does not constitute direct physical loss or damage to property within the meaning of a commercial property insurance policy under California law." 15 Cal. 5th at 1118. As noted, this case arose from an insurance coverage dispute and involved the interpretation of policy terms.

---

[7] Defendants maintain that Plaintiffs' allegations concerning "heavy metals" are too conclusory, noting that Plaintiffs do not allege "the quantity or concentration of any such materials[]" or that they "conducted any testing on their properties." Reply at 3-4, ECF No. 76. Although such detail is perhaps preferable, Defendants do not cite any cases requiring this level of detail at the pleading stage.

7

1  Unlike *Coppola* and *Blue Water Boating*, it did not address the nature and extent of property
2  injury that is required to overcome the economic loss doctrine.  Defendants do not persuasively
3  argue that airborne viruses such as COVID-19 are analogous to heavy metal and noxious gas
4  contaminants, such that the scope of the economic loss rule should be expanded in this manner.
5  Thus, the Court declines to adopt an additional requirement that Plaintiffs must allege that
6  contaminants rendered their properties wholly unusable or uninhabitable to overcome the
7  economic loss doctrine.

\*\*\*

In sum, the Court holds that the Solanos have alleged sufficient personal physical injury, and the Plaintiffs have alleged sufficient physical injury to their property to avoid dismissal of their negligence claims based on the economic loss doctrine at the pleading stage.[8]

### B.   Whether Plaintiffs Sufficiently Allege Private Nuisance

A private nuisance claim requires a substantial and unreasonable interference with "the plaintiff's interest in the use and enjoyment of the land[.]" *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 938 (1996).  Defendants argue that Plaintiffs' private nuisance claims rest on "vague allegations that there temporarily was soot and ash on their property" that are insufficient to state a claim for private nuisance.  Reply at 8 (citing FAC ¶ 127).  The Court disagrees.

Plaintiffs allege an interference sufficient to state a claim for private nuisance.  Beyond falling soot and ash during the incident, Plaintiffs allege that their land has been contaminated by nickel, cobalt, manganese, lithium, and toxic gases and chemicals.  *See* FAC ¶¶ 4, 65, 67, 80, 82, 88, 127.  Whether an interference is substantial and unreasonable is "a question of fact that turns on the circumstances of each case." *San Diego Gas & Elec.*, 13 Cal. 4th at 938-39.  Thus, whether

---

[8] Defendants argue that the Haute entities' claims for nuisance and trespass are "merely a clone of the [negligence claim] using a different label," and thus are barred by the economic loss doctrine insofar as "they seek recovery for alleged property damages."  Mot. at 10 (citations omitted). Because the Court concludes that the Haute entities' negligence claims are not barred by the economic loss doctrine, the Haute entities' private nuisance and trespass to real property claims are not barred either.

8

1 the land contamination alleged by Plaintiffs constitutes a substantial and unreasonable interference

2 is a question of fact that should not be decided at the pleading stage. Accordingly, Plaintiffs have

3 adequately stated a claim for private nuisance.[9]

### C. Whether Plaintiffs Sufficiently Allege Their Requests for Damages

Defendants contend that Plaintiffs fail to sufficiently plead their requests for loss of property value damages, medical monitoring, and punitive damages. Mot. at 17. The Court addresses each request for relief and concludes that Plaintiffs have adequately pled loss of property value but have not sufficiently pled punitive damages and medical monitoring.

#### 1. Loss of Property Value

Defendants argue that Plaintiffs' request for damages for loss of property value must be dismissed because Plaintiffs do not allege physical harm to their property and loss in property value alone is not sufficient to establish a claim. Reply at 11; *see also San Diego Gas & Elec.*, 13 Cal. 4th at 937 ("A diminution in property *value*, however, is not a type of physical damage to the property itself, but an element of the measure of damages when such damage is otherwise proved."). Because the Court concludes that Plaintiffs have alleged property damage based on Defendants' contamination of their land, *see* Section IV.A.2, Plaintiffs may maintain their request for damages for loss of property value.

#### 2. Punitive Damages

Defendants assert that Plaintiffs do not allege facts sufficient to maintain a request for punitive damages because they do not allege a Vistra corporate actor acted with malice, oppression, or fraudulent intent. Mot. at 19. Punitive damages require proof that a defendant "has been guilty of oppression, fraud, or malice[.]" Cal. Civ. Code § 3294(a). Where, as here, the

---

[9] Defendants also argue that Plaintiffs' allegation that Defendant created a "fire hazard" is a future injury for which Plaintiffs could only recover under a public – as opposed to private – nuisance claim. Mot. at 15 ("[A] claim based on a potential future injury, such as a fire hazard, is only cognizable as a *public* nuisance claim."); Reply at 8 (citing FAC ¶¶ 125, 127); *see Koll-Irvine*, 24 Cal. App. 4th at 1041-1042 (1994) (explaining that fear of a fire hazard will not support a private nuisance claim but could support a public nuisance claim). The Court declines to address this argument, having concluded that Plaintiffs sufficiently allege a present harm based on contamination.

9

defendant is a corporation, plaintiffs requesting punitive damages must allege that an "officer, director, or managing agent of [the] corporation" acted with malice, oppression, or fraudulent intent. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1148 (N.D. Cal. 2018); *see also* Cal. Civ. Code § 3294(a)-(b)). Although California has a heightened pleading standard for punitive damages, plaintiffs in federal court need only "include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 918 (N.D. Cal. Sept. 9, 2015) (cleaned up) (collecting cases).

Plaintiffs do not appear to contest that they fail to allege that any Vistra officer, director, or managing agent acted with malice, oppression, or fraudulent intent. Opp. at 6; *see also* Reply at 10. Instead, Plaintiffs state that they "will attempt to discover facts that may support punitive damages and will seek to amend should additional facts supporting that relief develop." Opp. at 6. Because Plaintiffs have failed to plead that an officer, director, or managing agent of Defendants committed an act of oppression, fraud, or malice, their request for punitive damages is dismissed with leave to amend.

### 3. Medical Monitoring

Defendants argue that Plaintiffs have failed to plead facts sufficient to maintain a request for medical monitoring. Mot. at 17. "In the context of a toxic exposure action, a claim for medical monitoring seeks to recover the cost of future periodic medical examinations intended to facilitate early detection and treatment of disease caused by a plaintiff's exposure to toxic substances." *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053 (N.D. Cal. 2015) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004-05 (1993)). In *Potter*, the California Supreme Court held that "the cost of medical monitoring is a compensable item of damages where the proofs demonstrate, through reliable medical expert testimony, that the need for future monitoring is *a reasonably certain consequence* of a plaintiff's toxic exposure and that the recommended monitoring is reasonable." 6 Cal. 4th at 1007, 1009 (emphasis added) (noting that medical monitoring is not a tort but, rather, "a compensable item of damage when liability is established under traditional tort theories of recovery"). In determining whether there is a "reasonably certain

need" for medical monitoring, courts consider five factors: (1) "the significance and extent of the plaintiff's exposure to the chemicals"; (2) "the relative toxicity of the chemicals"; (3) "the seriousness of the diseases for which plaintiff is at an increased risk"; (4) "the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to (a) plaintiff's chances of developing the disease" absent exposure and (b) the general public's chances of developing the disease; and (5) "the clinical value of early detection and diagnosis." *Id.* at 1006 (citation omitted).

Here, Plaintiffs fail to sufficiently allege their request for medical monitoring. Plaintiffs allege "[t]he long-term effects on their health from living near the [Vistra facility] on January 16, 2025 and inhaling the toxic gases containing heavy metals like nickel, cobalt, manganese, and lithium requires medical monitoring." FAC ¶ 88. Plaintiffs assert that "[m]any of these heavy metals are known carcinogens, or possible carcinogens." *Id.* ¶ 81. However, Plaintiffs do not explicitly identify what disease(s) they are at risk of developing that would require medical monitoring. In addition, they do not allege the seriousness of the risk, the clinical value of early detection and diagnosis, or "what threshold level of exposure creates the increased risk." *Riva*, 82 F. Supp. 3d at 1056-1061 (dismissing medical monitoring request where plaintiffs identified disease allegedly requiring medical monitoring but did not sufficiently allege the significance of their exposure to the chemicals at issue). In short, based on the *Potter* factors, Plaintiffs fail to sufficiently allege facts supporting their request for medical monitoring. The Court dismisses their request for medical monitoring with leave to amend.

## V.   CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is GRANTED in part, and Plaintiffs' requests for punitive damages and medical monitoring are dismissed with leave to amend. The Court DENIES Defendants' motion to dismiss Plaintiffs' claims of negligence (third claim), private nuisance (fourth claim), and trespass to real property (fifth claim in part), as well as Plaintiffs' request for loss of property value damages. As stipulated to by the parties, Plaintiffs' strict products liability (first claim), inverse condemnation (second claim), and trespass to chattels (fifth claim in part) claims are withdrawn with prejudice.

11

Plaintiffs shall file an amended complaint, if any, by January 30, 2026. Parties are reminded of the Court's recent adoption of a meet-and-confer requirement prior to the filing of any motion. Civil Standing Order § VIII.A. The Court expects parties to stipulate to the withdrawal of claims as appropriate prior to parties incurring the expense and the Court expending judicial resources on unnecessary motion practice for claims later dismissed at hearing.

**IT IS SO ORDERED.**

Dated: January 7, 2026

Eumi K. Lee
United States District Judge